THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| CHRISTINA JULIANA JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>JAMES LYDON ALLRED, in his individual capacity, SAXTON BROWN, in his individual capacity, DAVID MCDANIEL, in his individual capacity, and BRYAN HENDRIX, in his individual capacity,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [MS. JOHNSON'S] MOTION TO DETERMINE AND AWARD ATTORNEY FEES AND COSTS**<br><br>Case No. 4:25-cv-00068-DN-PK<br><br>District Judge David Nuffer |

The parties entered into an agreement ("Rule 68 Agreement") to settle only one month after this case was filed.[1] On July 3, 2025, Judgment was entered approving the Rule 68 Agreement.[2] The Rule 68 Agreement stipulated an award of attorney's fees was "to be determined and awarded by the Court in an Amended Judgment if the parties cannot reach agreement thereon within 21 days of the entry of this Judgment."[3] This order determines the fees to be awarded.

After the parties reached an impasse on fee negotiations, Plaintiff Christina Juliana Johnson filed a Motion for Attorney Fees and Memorandum in Support ("Motion") on August 11, 2025.[4] Defendants James Lydon Allred, Saxton Brown, David McDaniel, and Bryan Hendrix

---

[1] Notice of Acceptance of Defendants' Rule 68 Offer of Judgment ("Notice of Acceptance"), docket no. 20, filed July 2, 2025; Offer of Judgment, Exhibit A to Notice of Acceptance, docket no. 20-1, filed July 2, 2025.

[2] Judgment, docket no. 21, filed July 3, 2025.

[3] *Id*. at 1.

[4] Motion to Determine and Award Attorney Fees and Costs and Memorandum in Support ("Motion"), docket no. 24, filed August 11, 2025.

(collectively "Defendants") opposed two weeks later.[5] Defendants argue that "Plaintiff requests over $50,000 in attorneys' fees for filing a complaint" and contend "[t]he fees awarded should be significantly reduced due to overbilling, block billing, excessive research and attorney team meetings, and the like."[6] Ms. Johnson filed a reply.[7]

For the reasons stated below, the Motion is GRANTED.

**Contents**

1    BACKGROUND ................................................................................................................ 2
     1.1    Factual Background ............................................................................................... 2
     1.2    Procedural Background.......................................................................................... 7
2    DISCUSSION ................................................................................................................... 8
     2.1    Ms. Johnson Did Not Use Block Billing or Imprecise Entries. ........................... 11
     2.2    Defendants' Other Fee Criticisms are Groundless................................................ 12
            2.2.1    Ms. Johnson's Requested Rates Reflect the Prevailing Market. .............. 13
            2.2.2    Ms. Johnson's Factual Research Was Reasonable. ................................. 14
            2.2.3    The Complaint Drafting Was Reasonable. .............................................. 16
            2.2.4    Ms. Johnson's Fee Request for Preparation of the Motion Is Reasonable.
                     17
     2.3    The Cost Claim is Correct..................................................................................... 18
3    ORDER ............................................................................................................................ 19

## 1   BACKGROUND

### 1.1   Factual Background[8]

Plaintiff Christina Juliana Johnson, at the time of events in the Complaint, was 18 years old.[9] On April 19, 2024, Ms. Johnson was involved in an accident after stopping at a friend's house.[10] At 10:04 P.M., Ms. Johnson stopped to turn left and could not see two fourteen-year-old

---

[5] Memorandum in Opposition to Plaintiff's Motion for Attorneys' Fees ("Opposition"), docket no. 25, filed August 25, 2025.

[6] *Id*. at 1.

[7] Reply in Support of Plaintiff's Motion to Determine and Award Attorney Fees and Costs and Memorandum in Support ("Reply"), docket no. 28, filed September 8, 2025.

[8] Because Defendants accepted settlement before filing an answer, the Complaint's allegations constitute the essential facts of this case.

[9] Complaint ¶¶ 1, 9; docket no. 1, filed June 3, 2025.

[10] *Id*. ¶¶ 14-15.

riders on an electric scooter traveling northbound at 39 miles per hour, 24 miles per hour over the statutory limit.[11] The scooter collided with Ms. Johnson's car.[12] Ms. Johnson exited her car, went into shock, and ran screaming "help me," causing nearby residents to investigate.[13] Ms. Johnson ran approximately 758 feet before collapsing.[14] It took about thirty minutes for her to stop crying.[15]

While other officers were on the scene investigating,[16] Officer James Allred arrived at 10:53 P.M. to conduct field sobriety tests.[17] Ms. Johnson had not been drinking and did not smell like alcohol.[18] Ms. Johnson denied alcohol and illicit drug use, reporting only non-impairing Accutane prescription medication.[19] Officer Allred reported observing "rebound dilation" in Ms. Johnson's eyes.[20] Ms. Johnson Officer told Allred she has anisometropia.[21] Officer Allred completed a report containing false or materially misleading statements about Ms. Johnson's performance and did not report Ms. Johnson's alleged anisometropia.[22]

While waiting for St. George police to conduct their investigation, Ms. Johnson disclosed to officers that she had been around others smoking cannabis two days previous.[23] St. George

---

[11] *Id*. ¶¶ 16, 18-22.

[12] *Id*. ¶ 25.

[13] *Id*. ¶¶ 27-34 (*citing* Branson Bodycam at 2:30, 16:15, 32:00).

[14] *Id*. ¶ 35.

[15] *Id*. ¶ 44.

[16] *Id*. ¶ 38.

[17] *Id*. ¶¶ 51-52.

[18] *Id*. ¶ 56.

[19] *Id*. ¶¶ 62-65, 181.

[20] *Id*. ¶ 69.

[21] *Id*. ¶ 74.

[22] *Id*. ¶¶ 77-78.

[23] *Id*. ¶¶ 86-89 (*citing* Mickelson Bodycam at 1:17:00; *and* DeMille Bodycam at 1:19:45).

police knew Ms. Johnson was not at fault and that they lacked probable cause.[24] Despite lacking probable cause, Officer Allred arrested Ms. Johnson.[25] Officer Allred noted Ms. Johnson's disclosure about being around cannabis in his report.[26]

Officer Allred drove Ms. Johnson to the DUI processing center.[27] During the drive, Ms. Johnson again told Officer Allred she had been in a room with others smoking marijuana, earlier in the week.[28] Officer Allred omitted this disclosure from his report.[29] Officer Allred and Officer Brown both removed their body cameras multiple times.[30] Officer Allred informed Ms. Johnson she had been arrested for DUI and requested blood and urine tests, to which Ms. Johnson consented.[31] Ms. Johnson consented to a blood draw, but Officer Allred told her he had obtained a warrant.[32] Officer Brown requested Officer Hendrix search Ms. Johnson's car for further evidence.[33] Officer Brown tested Ms. Johnson's urine.[34] Ms. Johnson tested negative on all thirteen categories including cannabinoids.[35] Officer Allred informed Officer Hendrix of the negative results, but not Ms. Johnson.[36]

---

[24] *Id*. ¶¶ 90-91.
[25] *Id*. ¶ 92.
[26] *Id*. ¶¶ 95-97 (*citing* Incident Report at 25).
[27] *Id*. ¶ 98.
[28] *Id*. ¶ 99 (*citing* FST Video at 35:00).
[29] *Id*. ¶¶ 100-101.
[30] *Id*. ¶¶ 102-108.
[31] *Id*. ¶¶ 112-113.
[32] *Id*. ¶¶ 163-164, 221 (*citing* Hall Bodycam at 1:31:30).
[33] *Id*. ¶¶ 119-122, 139-140 (*citing* Brown Bodycam 1 at 19:00; Hendrix Bodycam at 23:15).
[34] *Id*. ¶¶ 123-128.
[35] *Id*. ¶ 129.
[36] *Id*. ¶¶ 130-138 (*citing* Hendrix Bodycam at 31:30).

Officer Brown conducted a drug recognition evaluation (DRE).[37] Officer Brown expressed ambivalence regarding Ms. Johnson's results.[38] Ms. Johnson asked to see her mother, who was waiting at the police station with an attorney, but Officer Allred refused.[39] When Ms. Johnson asked why she was going to jail, Officer Allred told Ms. Johnson "after the accident you took off running. I get there's nerves. I get that there's probably some stuff involved in that."[40] The incident report states Officer Allred arrested Ms. Johnson based on possible DUI charges though Officer Allred knew Ms. Johnson had run yelling for help.[41]

Officer Brown questioned Ms. Johnson about cannabis use, and Ms. Johnson reiterated that she had been in a room with others smoking earlier in the week.[42] Officer Brown asked, "[d]id you feel high?" and Ms. Johnson replied, "I don't think so."[43] Officer Brown noted this conversation anachronistically to imply it occurred during the DRE evaluation.[44] Officer Brown misrepresented timing because Ms. Johnson's mother had an attorney present who was not permitted to see Ms. Johnson.[45] Officer Allred told Ms. Johnson she was being charged with leaving the scene, DUI, and negligently operating a vehicle resulting in serious bodily injury.[46] Officer Hall placed Ms. Johnson in handcuffs in a police vehicle.[47]

---

[37] *Id*. ¶¶ 141-145.

[38] *Id*. ¶ 153 (*citing* Incident Report at 7-12).

[39] *Id*. ¶¶ 166-170 (*citing* Allred Bodycam 2 at 00:30).

[40] *Id*. ¶¶ 172-173 (*citing* Hall Bodycam at 1:33:10).

[41] *Id*. ¶¶ 174-175, 177-178, 180-181 (*citing* Affidavit and Incident Report at 21-26).

[42] *Id*. ¶¶ 190-193.

[43] *Id*. ¶¶ 194-195 (*citing* Brown Bodycam 2 at 5:45-50).

[44] *Id*. ¶¶ 196-198 (*citing* Incident Report at 10-11).

[45] *Id*. ¶ 198.

[46] *Id*. ¶¶ 201-203.

[47] *Id*. ¶¶ 206-207 (citing Hall Bodycam at 2:18:15).

Officer Allred spoke with Ms. Johnson's family and attorney but failed to say that the urine test showed no illicit substances.[48] Officer Allred told Ms. Johnson's family, and attorney, that Ms. Johnson had been honest, and this would reflect in his reports.[49] Officer Allred stated in his report that Ms. Johnson was not honest.[50] Ms. Johnson's mother told Officer Allred that Ms. Johnson has a history of trauma responses and had been seeing a counselor.[51] Officer Allred submitted his probable causer affidavit after the conversation with Ms. Johnson's family but included none of Ms. Johnson's medical information in the affidavit.[52] Officer McDaniel prepared the reconstruction report which included false or materially misleading statements.[53] Ms. Johnson spent the night in jail and was released on April 20, 2024.[54]

On April 20, 2024, media published stories quoting Officer Allred's false affidavit.[55] Officer McDaniel contributed to public statements suggesting Ms. Johnson had been driving under the influence.[56] Ms. Johnson immediately faced bullying from her school peers due to the media stories.[57] Ms. Johnson moved her studies online and did not return to regular classes for the remainder of high school.[58] The Washington County Attorney commenced criminal prosecution on April 22, 2024, relying on Officer Allred's affidavit.[59] On May 3, 2024, lab

---

[48] *Id*. ¶¶ 208-211 (*citing* Allred 2 at 10:20).

[49] *Id*. ¶ 112.

[50] *Id*. ¶¶ 208, 213 (*citing* Incident Report at 23, 25).

[51] *Id*. ¶ 214 (*citing* Allred Bodycam 2 at 2:40, 17:50).

[52] *Id*. ¶¶ 215-217.

[53] *Id*. ¶¶ 219-221.

[54] *Id*. ¶¶ 222-227.

[55] *Id*. ¶ 225.

[56] *Id*. ¶ 230.

[57] *Id*. ¶¶ 231-232.

[58] *Id*. ¶ 233.

[59] *Id*. ¶¶ 234-236.

results confirmed Ms. Johnson had no drugs in her system.[60] On May 7, 2024, the Washington County Attorney moved to dismiss all charges, which the court granted on May 9, 2024.[61] On May 15, 2024, a hearing officer concluded statutory provisions required to suspend Ms. Johnson's license were not provided and recommended against the action.[62]

### 1.2  Procedural Background

The procedural background of this case is brief. Ms. Johnson filed her complaint on June 3, 2025.[63] The complaint articulates the facts above as a series of alleged constitutional violations by cross-referencing of bodycam footage from eight officers, toxicology reports, field sobriety evaluations, and reconstruction analyses presented in chronological order with photographic evidence. Ms. Johnson's counsel identified specific moments when St. George police officers violated Ms. Johnson's rights, including: (1) the non-disclosure of Ms. Johnson's urine test showing negative results for all thirteen substances;[64] (2) denial of access to Ms. Johnson's attorney;[65] and (3) drafting official reports with statements proven false through side-by-side comparison charts.[66] Photographs were included in the Complaint.

The complaint tracks Officers Allred and Brown's concealment of exculpatory test results from Ms. Johnson, her family, and their supervisors.[67] The Complaint documents a pattern of body camera deactivations before critical discussions,[68] creating a foundation for

---

[60] *Id*. ¶ 239.

[61] *Id*. ¶¶ 239-241.

[62] *Id*. ¶¶ 242-245.

[63] *Id*.

[64] *Id*. at ¶¶ 128-130.

[65] *Id*. at ¶¶ 166-170, 198, 204-205.

[66] *Id*. at ¶¶ 78, 96-97, 144-145, 197, 217, 221.

[67] *Id*. at ¶¶ 131-138.

[68] *Id*. at ¶¶ 103-108, 158-161, 184-186.

inferring deliberate evidence suppression. The uncontested factual record describes St. George police officers requesting corroborating evidence by searching Ms. Johnson's car after the arrest had already occurred[69] and Officer Brown's acknowledgment that he could not definitively say Ms. Johnson was impaired: "[t]here's nothing sticking out to me."[70]

Six days after the case was filed, four summonses were issued for Defendants,[71] Defendants waived service June 30th. Defendants made an offer of judgment June 23rd[72] which was accepted July 2nd.

> Pursuant to Rule 68 of the Federal Rules of Civil Procedure, Defendants hereby offer to allow Plaintiff Christina Juliana Johnson to take judgment against them in this action for the total sum of Twenty-Four Thousand and One Dollars and no/100 ($24,001.00), plus costs and reasonable attorneys' fees as allowed by 42 U.S.C. § 1988 incurred through the date of this offer.[73]

Judgment was entered.[74] The complaint's narrative contained evidence strong enough that Defendants decided to settle rather than litigate. The parties reached a quick resolution, with the biggest disagreement being the amount of attorneys' fees. This question is resolved in this order.[75]

## 2   DISCUSSION

Ms. Johnson seeks $51,972.00 in attorneys' fees and $577.60 costs under 42 U.S.C. § 1988, 28 U.S.C. § 1920, and Federal Rule of Civil Procedure 54(d) as articulated in the Rule

---

[69] *Id*. at ¶¶ 120-122.

[70] *Id*. at ¶ 153.

[71] Summons Issued to James Lydon Allred, docket no. 11, filed June 9, 2025; Summons Issued to Saxton Brown, docket no. 12, filed June 9, 2025; Summons Issued to David McDaniel, docket no. 13, filed June 9, 2025; Summons Issued to Bryan Hendrix, docket no. 14, filed June 9, 2025.

[72] Defendants' Offer of Judgment, attached to Notice of Acceptance of Defendants' Rule 68 Offer of Judgment, docket no 20, filed July 2, 2025.

[73] Notice of Acceptance of Defendants' Rule 68 Offer of Judgment, docket no 20, filed July 2, 2025.

[74] Judgment, docket no. 21, filed July 3, 2025.

[75] Motion, docket no. 24, filed August 11, 2025; Opposition, docket no. 25, filed August 25, 2025.

68 offer.[76] Ms. Johnson also asks for fees incurred for preparing the Motion.[77] Defendants do not oppose Ms. Johnson's entitlement to some attorneys' fees,[78] but ask, for various reasons, that the amount should be reduced to $10,000.[79]

Section 1988(b) gives courts discretion to award reasonable attorneys' fees to prevailing parties in certain types of cases.[80] "[U]nder the rubric of 42 U.S.C. § 1988 'attorney's fees,' the fees for attorneys, law clerks, and legal assistants are all determined in the same fashion: multiplying reasonable hours by reasonable rates to reach a 'lodestar' amount."[81] Factors to consider include:

(1) whether the tasks being billed "would normally be billed to a paying client";

(2) the number of hours spent on each task;

(3) "the complexity of the case;"

(4) "the number of reasonable strategies pursued;"

(5) "the responses necessitated by the maneuvering of the other side"; and

(6) "potential duplication of services' by multiple lawyers"[82]

"The district court should take the first step in calculating the lodestar by determining the number of hours reasonably spent by counsel for the party seeking fees."[83] "Once the district court has adequate time records before it, it must then ensure that the winning attorneys have

---

[76] Motion at 2.

[77] *Id.*

[78] Opposition at 2.

[79] *Id.* at 10.

[80] 42 U.S.C. § 1988.

[81] *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998).

[82] *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

[83] *Case*, 157 F.3d at 1250 (citing Ramos, 713 F.2d at 553).

exercised 'billing judgment.'"[84] "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended."[85] "The district court may also reduce the reasonable hours awarded if 'the number [of compensable hours] claimed by counsel include[s] hours that were unnecessary, irrelevant and duplicative.'"[86] "There is no requirement, either in this court or elsewhere, that district courts identify and justify each disallowed hour."[87] "Nor is [there] any requirement that district courts announce what hours are permitted for each legal task."[88]

Here, Ms. Johnson seeks a total of $55,442.00 for 151 hours of work on this case.[89] Ms. Johnson insists every billed effort is justified because "this case [was] complex."[90] On the other hand, Defendants rely on the brief life of this case to request a reduction.[91] Defendants state that they "immediately filed an offer of judgment for $24,000 to limit the prospective cost of the litigation" and then Ms. Johnson "filed the present motion seeking over $50,000 in attorneys' fees."[92] Defendants ask that they not be punished for trying to avoid litigation.[93]

Defendants list places in the billing statement where a reduction of fees is reasonable. The first is Ms. Johnson's counsel's use of block billing.

---

[84] *Id*.

[85] *Id*.

[86] *Id*. (*quoting Carter v. Sedgwick County, Kan.*, 36 F.3d 952, 956 (10th Cir.1994)).

[87] *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986) (citing *New York State Association for Retarded Children v. Carey,* 711 F.2d 1136, 1146 (2d Cir.1983)).

[88] *Id*. at 1202.

[89] Motion at 2.

[90] *Id*. at 7.

[91] Opposition at 1-2.

[92] *Id*. at 1.

[93] *Id*.

### 2.1 Ms. Johnson Did Not Use Block Billing or Imprecise Entries.

Defendants contend that Ms. Johnson's attorneys' fees should be reduced because her counsel used block billing.[94] Ms. Johnson's counsel reply that Defendants' argument is unsupported, arguing that the essence of the block billing argument is "because [Defendants] said so."[95] Defendants claim to "have identified 46 examples of block billing."[96]

"Block billing" refers to "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks."[97] The Tenth Circuit "admonishes attorneys who wish to recover attorneys' fees not to utilize the practice of block billing, because block billing does not precisely delineate how hours were allotted to specific tasks."[98] The Tenth Circuit characterizes block billing as an "imprecise practice [that] may be strong evidence that a claimed amount of fees is excessive."[99]

None of the 46-time entries flagged by Defendants in the exhibit to their opposition show block billing. None show "the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Each of the time entries itemized the time expended for the listed tasks. This is true of the four "flagship" entries included in the text of Defendants' opposition:

- "Draft complaint: draft claim for relief; phone call with John Mejia discussing concerns regarding drafting allegations of defendants' motives, begin drafting

---

[94] *Id.* at 8-9.

[95] Reply at 9.

[96] Opposition at 9 (referencing Exhibit 3 to Opposition).

[97] *Robinson v. City of Edmond*, 160 F.3d 1275, 1285 (10th Cir. 1998) (*quoting Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n. 15 (10th Cir.), *cert. denied*, 519 U.S. 928 (1996)).

[98] *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000) (internal quotations omitted).

[99] *Flying J Inc. v. Comdata Network, Inc.*, 322 F. App'x 610, 617 (10th Cir. 2009) (*citing Robinson v. City of Edmond,* 160 F.3d 1275, 1284 (10th Cir.1998)) (unpublished).

table of misrepresentation regarding Allred's probable cause affidavit." (3.2 hours, $1,216, Anna Christiansen, February 14, 2025).

• "Review Brown body camera footage against Hendrix body camera footage regarding call between Brown and Hendrix and draft additional facts regarding the search of Julia's vehicle; review Brown incident report and incorporate report statements into complaint; review Hall body camera with regarding to Allred's absence during unrecorded discussion with Brown." (4.7 hours, $1,786, Anna Christiansen, March 14, 2025).

• "Prepare complaint: finish review of Allred's field sobriety camera testing: develop facts related to moment of arrest, Allred's statements to Julia during drive, and Allred's request for consent to blood and urine test; review Hendrix search of Julia's vehicle." (6.0 hours, $2,280, Anna Christiansen, March 27, 2025).

• "Review Brown field sobriety test body camera footage and develop facts regarding eye tests, pulse, and interview; research modified Rombert test and draft facts related to Brown's modified Romberg test; proofing and clean up draft." (4.0 hours, $1,520, Anna Christiansen, March 28, 2025).[100]

This misdirected argument appears to be the result of ignoring the definition of block billing. "Block billing" refers to "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks."[101] It is entirely permissible to include multiple tasks in a single itemize time entry. It is not permissible to include all daily work in one time entry without task itemization.

Ms. Johnson's counsel did not engage in block billing, and no fees will be deducted on that ground.

### 2.2 Defendants' Other Fee Criticisms are Groundless

Defendants' remaining objections to the amount of attorneys' fees sought are similarly groundless. Many of Defendant's objections seem like the guidelines imposed by insurance

---

[100] Opposition at 9 (*citing* Exhibit A).

[101] *Robinson v. City of Edmond*, 160 F.3d 1275, 1285 (10th Cir. 1998) (*quoting Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n. 15 (10th Cir.), *cert. denied*, 519 U.S. 928 (1996)).

companies on their retained counsel.[102] These do not provide any useful standard for Ms. Johnson's counsel in a civil rights case. As Ms. Johnson stated:

> The Tenth Circuit has long precluded courts from considering defense counsel's rate to evaluate plaintiff counsel's rate, explaining that plaintiff and defense civil rights work are "markedly dissimilar," defense counsel are "typically paid regardless of their success," get paid on a "shorter billing cycle" and often have "guaranteed" work from insurance pools.[103]

"As the [*Malloy v Monahan*] district court pointed out, 'Defendants' attempt to impose the insurance pool rate on attorneys who perform plaintiff's civil rights work ignores these benefits—benefits which attorneys who perform plaintiff's civil rights work do not enjoy.'"[104]

Some of these flawed arguments are addressed below.

### 2.2.1  Ms. Johnson's Requested Rates Reflect the Prevailing Market.

The parties dispute the reasonableness of Ms. Johnson's attorneys' hourly rates. Ms. Johnson seeks $600/hour for senior partner Ms. Porter, $500/hour for Mr. Mejia, $380/hour for Ms. Christiansen, and $190/hour for paralegals, arguing these rates reflect the prevailing market as confirmed by Mr. Robert Sykes' affidavit.[105] Defendants say these rates are excessive, citing Mejia's $400/hour request in 2023 in *Southern Utah Drag Stars, LLC v. City of St. George* ("*SUDS*"); national firm attorneys billing $400/hour in the *SUDS* case, and defense counsel's own $285/hour rate in this case.[106] Ms. Johnson replies that the *SUDS* comparison is misleading because ACLU Legal Director Groth's contemporaneous affidavit confirmed (a) Mejia's actual

---

[102] EMC Billing Guidelines For Attorneys Providing Legal Services, last visited January 21, 2026; Versus Underwriting Managers Defense Counsel Billing and Litigation Guidelines, last visited January 21, 2026; https://www.legalethicstexas.com/resources/opinions/opinion-533 (last visited January 21, 2026).

[103] Reply at 4 (*citing See Malloy v. Monahan,* 73 F.3d 1012, 1018-19 (10th Cir. 1996); *and Case,* 157 F.3d at 1257).

[104] *Malloy,* 73 F.3d at 1018-19.

[105] Motion at 9.

[106] Opposition at 3; *S. Utah Drag Stars, LLC v. City of St. George*, 744 F. Supp. 3d 1237 (D. Utah 2024).

13

rate in the *SUDS* case was $500/hour, (b) the lower requested rate reflected 2023 work in the smaller market of St. George, Utah, and (c) national firm attorneys in the *SUDS* case voluntarily reduced their $1,000+ rates to local market levels.[107]

Courts in this circuit recognize varying hourly rates for similarly situated clients reflect standard legal practice, not unreasonableness.[108] Attorneys regularly adjust hourly rates based on case complexity, client capacity, geographic market, and strategic considerations. Comparing fee arrangements of other cases tells little about whether the rates *here* are reasonable. This case was complex, and the hours invested produced an early settlement that reflected effective advocacy while conserving the resources of all those involved. Mr. Sykes' affidavit confirms the rates reflect the prevailing market for legal services. The rates are reasonable.

### 2.2.2  Ms. Johnson's Factual Research Was Reasonable.

Defendants challenge Ms. Johnson's counsel's hours spent doing "background research" as unreasonable.[109] This was actually factual research and legal research pertaining to this case. Defendants count 14.5 hours of video footage review and declare the rest of the time spent on video review as unjustified, and call the detailed factual allegations as excessive.[110] Ms. Johnson responds that counsel reviewed nearly 30 hours of footage and cross-referenced it frame by frame against officers' reports to document fabrications.[111] This work produced a complaint with

---

[107] Reply at 3.

[108] *In re Vista Foods USA, Inc.*, 234 B.R. 121, 125 (Bankr. W.D. Okla. 1999); *Large v. Fremont Cnty., Wyoming*, No. 05-CV-0270, 2013 WL 12342417, at *4 (D. Wyo. Sept. 20, 2013) (*citing AR ex rel. R. V. v. New York City Dep't of Educ.*, 407 F.3d 65, 80 (2d Cir. 2005); *Rodriguez v. Wet Ink, LLC*, No. 08-CV-00857-MSK-CBS, 2014 WL 287339, at *6 (D. Colo. Jan. 27, 2014); *Kelley v. City of Albuquerque*, No. CIV. 03-507 JBACT, 2005 WL 3663515, at *16 (D.N.M. Oct. 24, 2005); *RE/MAX, LLC v. Shenzhen Remax Co.*, No. 15-CV-02496-REB-SKC, 2020 WL 13042391 (D. Colo. Mar. 13, 2020).

[109] Opposition at 8.

[110] Opposition at 4.

[111] Reply at 3-5.

250 factual allegations across 39 pages rebutting three officers' misrepresentations, satisfying Rule 11(b)(3)'s requirement for reasonable investigation before alleging law enforcement fraud.[112] The complaint's complexity and completeness is its virtue, not its vice. Defendants tendered an offer of judgment almost immediately.

Attorneys routinely review evidence multiple times when drafting pleadings. This is work that clients regularly compensate. The Tenth Circuit authorizes billing hours "normally [] billed to a paying client" and prohibits categorical exclusions for "background research" when reasonably necessary to the litigation.[113] The Tenth Circuit describes "background research" as "time spent reading background material designed to familiarize an attorney with an *area of law* [which] is presumptively unreasonable."[114] In other words "a losing party should not be obligated to pay for that counsel's legal education."[115] However, "hours reasonably necessary for a lawyer to become familiarized with the facts and the law pertaining to the issue to be argued" are reasonably billed to clients and adversaries.[116]

As will be discussed more in Section 3.2.3, the 250 factual allegations across 39 pages of the Complaint were supported by specific body camera footage citations and documentary evidence. That detail required precisely the kind of work clients expect to pay for and fee-shifting statutes are designed to compensate.

---

[112] *Id.* at 6.

[113] *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983), *disapproved of by Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711 (1987).

[114] *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1258 (10th Cir. 2005) (*citing Case*, 157 F.3d at 1243) (emphasis added).

[115] *Id.* at 1258 (10th Cir. 2005) (*citing Mares*, 801 F.2d at 1202–05).

[116] *Flying J Inc. v. Comdata Network, Inc.*, No. CIV. 196CV066BSJ, 2007 WL 3550342, at *21 (D. Utah Nov. 15, 2007), aff'd, 322 F. App'x 610 (10th Cir. 2009) (*quoting Maldonado v. Houstoun,* 256 F.3d 181 (3d Cir.2001)).

### 2.2.3 The Complaint Drafting Was Reasonable.

Defendants challenge the 107 hours counsel[117] spent drafting the Complaint as excessive, asserting that preparing multiple complaint versions through excessive revisions was unreasonable.[118] Ms. Johnson responds that beating qualified immunity was "an onerous task."[119] Ms. Johnson notes that pleading standards required her to specifically rebut every officer assertion or face dismissal.[120] The complaint's sophistication preempted qualified immunity by including four cross-referenced evidentiary tables; pinpoint video citations; photographs; and 250 allegations documenting how multiple officers fabricated evidence across fourteen sobriety tests.

While *Ramos v. Lamm* noted that 100-plus hours drafting a complaint "demands explanation,"[121] it established no categorical ceiling and expressly acknowledged such time "may have been reasonable."[122] Ms. Johnson has provided a reasonable explanation. And the Complaint demonstrates the effort required to create it. Defendants cite out-of-circuit trial court cases which involve fundamentally different scenarios and are non-binding.[123] Most decisively, the complaint achieved its purpose: Defendants tendered a settlement almost immediately, confirming counsel exercised the "billing judgment" *Ramos* requires by "winnowing hours to

---

[117] Motion at 5.

[118] Opposition at 5.

[119] Motion at 6.

[120] Reply at 6.

[121] *Ramos v. Lamm*, 713 F.2d 546, 554.

[122] *Ramos*, 713 F.2d at 554.

[123] *See Port Drivers Fed'n 18, Inc. v. All Saints*, No. 09-1072, 2011 WL 3610100 (D.N.J. Aug. 16, 2011); *Alive v. Farmington Pub. Schs.*, No. 06-15594, 2008 WL 2922372, at *7 (E.D. Mich. July 25, 2008); *Williams v. Metro-North R.R. Co.*, No. 17-cv-3931, 2018 WL 3370678, at *10 (S.D.N.Y. July 10, 2018).

those reasonably necessary to achieve the result."[124] Defendants offer no evidence that competent counsel could have drafted an equally effective pleading in materially less time.

The hours spent drafting the complaint were reasonable.

### 2.2.4 Ms. Johnson's Fee Request for Preparation of the Motion Is Reasonable.

Ms. Johnson requests fees for preparing this Motion.[125] Defendants challenge Ms. Johnson's request on two grounds: conflicting numbers and incomplete success on her underlying claim.[126]

First, Ms. Johnson's motion lists three amounts she is requesting for preparing the Motion itself: (1) $3,470;[127] (2) $2,780;[128] and (3) $1,995.[129] Defendants argue the three conflicting figures render the request incomprehensible and unrecoverable. Second, Defendants argue Ms. Johnson cannot recover fees for the Motion because her request of $50,000 fees was legitimately disputed.[130] At the same time, Defendants acknowledge Ms. Johnson is "entitled to a reasonable fee in their Offer of Judgment."[131]

Ms. Johnson acknowledges the three figures is and calculates, using time records, $3,146 as the proper total.[132] Tenth Circuit precedent permits recovery of reasonable attorneys' fees for

---

[124] 713 F.2d at 553.

[125] Motion at 2.

[126] Opposition at 10.

[127] Motion at 2.

[128] *Id*. at 4.

[129] Opposition at 10.

[130] *Id*.

[131] *Id*.

[132] Reply at 11.

time spent preparing fee applications.[133] Without authority to support Defendants' position, it is reasonable to award Ms. Johnson $3,146 in fees for preparing the Motion.

### 2.3 The Cost Claim is Correct

Ms. Johnson seeks $577.60 in litigation expenses as attorney's fees under § 1988, including $172.60 for fees paid agencies for Government Records Access and Management Act ("GRAMA") requests essential to investigating and pleading her claims.[134] Defendants argue in two sentences that these GRAMA expenses fall outside § 1920's enumerated costs and argue this entirely forecloses recovery.[135] Ms. Johnson responds that § 1988 authorizes recovery of necessary out-of-pocket expenses normally billed to private clients when reasonable in amount, citing binding Tenth Circuit precedent.[136] Defendants do not challenge the expenses' necessity, reasonableness, or normal billability to private clients. Tenth Circuit precedent supports Ms. Johnson's position while Defendants offer bare statutory citation without legal analysis.[137] The materials received by GRAMA requests were indispensable to claim development, represent exactly the type of investigative cost any client would expect to bear, and the sum is proportionate to the litigation. The requested $577.60 in costs is GRANTED.

---

[133] *Case*, 157 F.3d at 1254 (quoting *Mares*, 801 F.2d at 1205); *see also Glass v. Pfeffer*, 849 F.2d 1261, 1266 n.3 (10th Cir. 1988); *Hernandez v. George*, 793 F.2d 264, 269 (10th Cir.1986).

[134] Motion at 11.

[135] Opposition at 10.

[136] Motion at 11 (*citing Bee v. Greaves,* 910 F.2d 686, 690 (10th Cir. 1990); and *Jane L. v. Bangerter,* 61 F.3d 1505, 1517 (10th Cir. 1995)).

[137] *Case*, 157 F.3d at 1257; *Bee*, 910 F.2d at 690; *Bangerter*, 61 F.3d at 1517.

## 3 ORDER

IT IS HEREBY ORDERED that Ms. Johnson's Motion is GRANTED. In total, Ms. Johnson is awarded $51,972 in attorneys' fees for the litigation, $3,146 in attorneys' fees for the Motion, and $577.60 in costs. Ms. Johnson shall provide the form of an amended judgment. Defendants are jointly and severally liable for this amount.

Signed January 29, 2026.

BY THE COURT

_____
David Nuffer
United States District Judge